**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:18-cv-1766-RBW |
| U.S. DEPARTMENT OF JUSTICE, | ) ) ) | |
| Defendant. | ) ) ) | |

## <u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

Defendant hereby moves for summary judgment under Federal Rule of Civil Procedure 56 with respect to the withholdings under Exemption 7(A) of the Freedom of Information Act in the sample documents that are currently the subject of litigation.  The attached memorandum and the supporting declarations and exhibits provide the basis for this motion.

Date: March 21, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

_s/Justin M. Sandberg_
JUSTIN M. SANDBERG (Ill. Bar. No. 6278377)
Senior Trial Counsel
U.S. Department of Justice, Civil Division
Federal Programs Branch
1100 L Street NW, Room 11004
Washington, DC 20005
Tel.: (202) 514-5838
Fax:  (202) 616-8460
Email: justin.sandberg@usdoj.gov

*Counsel for Defendant*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CITIZENS FOR RESPONSIBILITY          )
AND ETHICS IN WASHINGTON,            )
                                     )
    Plaintiff,   )
  v.                        )  No. 1:18-cv-1766-RBW
                                     )
U.S. DEPARTMENT OF JUSTICE,          )
                                     )
    Defendant.   )
_____ )


**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
BASED ON EXEMPTION 7(A)**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ...................................................................................................................... 5

      I.      LEGAL STANDARDS .......................................................................... 5

             A.     Summary Judgment ............................................................ 5

             B.     Exemption 7(A) ................................................................ 6

      II.     Defendant Appropriately Applied Exemption 7(A) ............................... 8

             A.     The Records Were Compiled for Law Enforcement Purposes. .................. 8

             B.     Disclosure Would Be Expected to Harm Enforcement Proceedings .......... 9

      III.    The Agency Must Reasonably Segregate Out Non-Exempt Information,
and It Has Done So. ............................................................................. 9

CONCLUSION .................................................................................................................... 11

# TABLE OF AUTHORITES

## Cases

*Am. Civil Liberties Union v. C.I.A.*,
  710 F.3d 422 (D.C. Cir. 2013) .............................................................................. 10

*Brayton v. Office of the U.S. Trade Representative*,
  641 F.3d 521 (D.C. Cir. 2011) ................................................................................ 5

*Citizens for Responsibility and Ethics in Washington ("CREW") v. U.S. Dep't of Justice*,
  746 F.3d 1082 (D.C. Cir. 2014) ........................................................................ 7, 9

*Crooker v. Bureau of Alcohol, Tobacco and Firearms*,
  789 F.2d 64 (D.C. Cir. 1986) .................................................................................. 7

*Dean v. U.S. Dep't of Justice*,
  87 F. Supp. 3d 318 (D.D.C. 2015) .......................................................................... 5

*Housley v. U.S. Dep't of Treasury, I.R.S.*,
  697 F. Supp. 3 (D.D.C. 1988) ............................................................................. 6, 9

*Jefferson v. U.S. Dep't of Justice.*,
  04-5226 (D.C. Cir. Oct. 26, 2005) ......................................................................... 6

*Jefferson v. U.S. Dep't of Justice.*,
  01-cv-1418  (D.D.C. March 31, 2003) .................................................................... 6

*John Doe Agency v. John Doe Corp.*,
  493 U.S. 146 (1989) ................................................................................................ 8

*Larson v. Dep't of State*,
  565 F.3d 857 (D.C. Cir. 2009) ............................................................................... 5

*Manning v. U.S. Dep't of Justice*,
  234 F. Supp. 3d 26 (D.D.C. 2017) .......................................................................... 7

*Mapother v. U.S. Dep't of Justice*,
  3 F.3d 1533 (D.C. Cir. 1993) .................................................................................. 6

*Mead Data Ctr. Inc. v. Dep't of Air Force*,
  566 F.2d 242 (D.C. Cir. 1977) ............................................................................... 10

*Nat'l Ass'n of Crim. Defense Lawyers v. U.S. Dep't of Justice Exec. Office for U.S. Attorneys*,
   844 F.3d 246 (D.C. Cir. 2016) ........................................................................... 9, 10

*Oglesby v. U.S. Dep't of Army*,
   79 F.3d 1172 (D.C. Cir. 1996) ................................................................................ 7

*Stern v. FBI*,
   737 F.2d 84 (D.C. Cir. 1984) ............................................................................... 6, 8

*Sussman v. U.S. Marshals Serv.*,
   494 F.3d 1106 (D.C. Cir. 2007) ............................................................................ 10

*Wolf v. CIA*,
   473 F.3d 370 (D.C. Cir. 2007) ................................................................................ 6

### **Statutes**

5 U.S.C. § 552 ............................................................................................... *passim*

### **Regulations**

28 C.F.R. § 16.4 ............................................................................................... 3, 4

### **Other Authorities**

U.S. Department of Justice, Office of Inspector General, A Report of Investigation of Certain
   Allegations Relating to Former FBI Deputy Director Andrew McCabe, February 2018, at
   https://oig.justice.gov/reports/2018/
   o20180413.pdf................................................................................................ 1, 3, 8

## **INTRODUCTION**

The Court instructed the parties to brief the application of Exemption 7(A) of the Freedom of Information Act (FOIA) to a sample of documents responsive to Plaintiff's FOIA request for materials related to any investigation of Andrew McCabe by the FBI's Office of Professional Responsibility.[1]  (The parties agreed on a sample of 100 pages of documents responsive to Plaintiff's request.)  The Court did so at this juncture – *i.e.*, even though the processing of documents in response to plaintiff's FOIA request is ongoing – to help resolve a dispute about the appropriate processing rate.  The Court had asked the parties to submit a joint processing schedule, but the parties disagreed about the appropriate processing rate for documents referred by the FBI to the U.S. Department of Justice's Office of Inspector General (OIG) for processing.  OIG argued that it could not process the documents at a higher rate, in part, because of the circumstances of this case.  That is, much of the information in the responsive documents is exempt from disclosure under FOIA Exemption 7(A) because its release would interfere with enforcement proceedings.  But some of the information that would otherwise be exempt from disclosure has been publicly acknowledged in an OIG report.  *See* OIG, A Report of Investigation of Certain Allegations Relating to Former FBI Deputy Director Andrew McCabe, February 2018, at https://oig.justice.gov/reports/2018/o20180413.pdf  ("OIG Rpt.").  Thus, OIG must painstakingly compare the documents at issue to the 35-page OIG report to un-redact any otherwise exempt information that has been publicly acknowledged.  This is a time-consuming process.

---

[1] Defendant invoked other exemptions where appropriate in the documents in the sample, but consistent with the Court's order, Defendants addresses only Exemption 7(A) in this brief.

Plaintiff has asserted that it is an unnecessarily time consuming process and is not born of necessity, but of Defendant's unnecessarily broad invocation of Exemption 7(A). That is, Plaintiff's argument goes, if Defendant did not try to apply Exemption 7(A) too broadly, then there would be no need to check as much information in the documents against the OIG report. Plaintiff's argument is flawed. This memorandum, and the accompanying declarations demonstrate that Defendant properly applied the exemption: (Defendant has separately sought leave to file the declaration of OIG Special Agent Stephen Lyons under seal and *ex parte*.) Defendant redacted material that would reasonably be expected to interfere with pending or reasonably anticipated enforcement proceedings, and no segregable, nonexempt information has been withheld. The validity of Defendant's application of Exemption 7(A) to this sample supports the processing schedule proposed by Defendant for documents referred by the FBI to OIG, and establishes the validity of Defendant's approach to invoking Exemption 7(A) with respect to the documents responsive to Plaintiff's FOIA request that were not included in the sample. It also entitles thus Defendant to summary judgment with regard to its withholding of information in the sample documents.

## **BACKGROUND**

On March 19, 2018, Plaintiff submitted a FOIA request to the FBI for "all documents related to any investigation or inquiry conducted by the FBI's Office of Professional Responsibility ("OPR") of, involving, or relating to former FBI Deputy Director Andrew McCabe, who was fired by Attorney General Jeff Sessions on March 16, 201[8]." *See* FOIA Request (attached to Declaration of David Hardy, Section Chief of the Record/Information

Dissemination Section, Information Management Division, FBI, March 21, 2019 ("Hardy Decl."), which is attached to the brief as Ex. 1).

In early April 2018, the FBI completed its search.  Hardy Decl. ¶ 7.  It located the OPR file responsive to Plaintiff's FOIA request and shortly thereafter began reviewing documents to determine what information could be released and what information, if any, was exempt from release under the FOIA.  *Id.*.

In the course of its review of the OPR file, the FBI identified various documents that were compiled or created by OIG during its investigation of former Deputy Director McCabe. *Id.* ¶ 9.  OIG had conducted a "misconduct investigation" of McCabe to determine whether he had lacked candor when questioned under oath by FBI agents and OIG investigators, whether he had lacked candor in a discussion with the FBI director, and whether he had improperly publicly disclosed an on-going investigation. *See* OIG Rpt. at 1-2.  OIG determined that McCabe, in fact, had lacked candor on several occasions and had improperly revealed the existence of an ongoing investigation.  *Id.* at 1-2.

The FBI contacted OIG to coordinate the processing of the OIG compiled documents, as required by one of the U.S. Department of Justice's FOIA regulations, 28 C.F.R. § 16.4(d).  That regulation provides, in part, that "[w]hen reviewing records . . . in response to a request, the component [of the Department of Justice] shall determine whether another component or another agency of the Federal Government is better able to determine whether the record is exempt from disclosure under the FOIA," and shall consult with the other component or agency or refer the records to such component or agency, if appropriate.  Under that regulation, if the component receiving the FOIA request determines that another agency or component is "best able to determine whether to disclose the record, [then] the component typically should refer the

responsibility for responding to the request regarding that record . . . ." 28 C.F.R. § 16.4(d)(2). Further, the regulation notes that, "[o]rdinarily, the component or agency that originated the record will be presumed to be best able to make the disclosure determination." *Id.* Ultimately, after conferring with OIG, the records were referred to OIG for it to respond directly to Plaintiff. Hardy Decl. ¶ 9. Between October 31 and December 12, 2018 , the FBI referred to OIG the responsive records that had been created or compiled by OIG. *Id.* ¶ 10.

OIG began processing the records. In the course of doing so, it determined that significant portions of the record would be covered by Exemption 7(A) of the FOIA, *see* Declaration of Ofelia C. Perez, Government Information Specialist, OIG, March 21, 2019, ¶¶ 8-12 ('Perez Decl.") (attached as Ex. 2), under which an agency may withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). Redacting sensitive documents, such as those compiled or created by an OIG investigation, to account for FOIA exemptions is in and of itself time consuming work. *See Perez*. Decl. ¶ 13. But here that task is further complicated by the publicly issued OIG Report. To avoid withholding information already made public in the OIG Report, OIG must compare the redacted information with the 35-page report Report. *Id.* This is an extremely time consuming process. *Id.*

As a result of the labor intensive nature of this process, and OIG's significant information-processing resource limitations, *See* Declaration of Deborah M. Waller, ECF No. 14-2, ¶¶ 2-6, Defendant proposed to plaintiff a 50-page-per-month processing rate for documents referred to OIG. Mtn. for Clarification and for Processing Schedule, Nov. 20, 2018, ECF No. 14, at 2. With regard to the resource limitations, OIG has four Government Information Specialists,

only three of whom process FOIA requests, and each of whom has other significant responsibilities, including processing documents responsive to congressional requests and processing the many hundreds of requests for *Giglio* information received by OIG each year. *See* Waller Decl. ¶¶ 2-6. Nonetheless, Plaintiff objected to this processing rate. Plaintiff's Opp. to Defendant's Mtn. for Clarification and for Processing Schedule, Nov. 26, ECF No. 15. The Court set a status conference. In conjunction with that conference, the Court ordered the parties to brief the "application of Exemption 7(A) to Plaintiff's FOIA request," Order, ECF No. 17, at 1, to assist it in determining an appropriate production schedule.

## ARGUMENT

## OIG PROPERLY APPLIED EXEMPTION 7(A) TO PROTECT NON-PUBLIC INFORMATION FROM INTERFERING WITH ENFORCEMENT PROCEEDINGS

Defendant properly applied Exemption 7(A) to the documents in the sample. The propriety of Defendant's application of Exemption 7(A) supports the processing schedule that Defendant has proposed for records referred to OIG, and accordingly, supports partial summary judgment with respect to the sample. It also supports using the same approach to Exemption 7(A) for documents that are not part of the sample.

### I.   LEGAL STANDARDS

#### A.  Summary Judgment

FOIA cases are typically and appropriately decided on motions for summary judgment." *Dean v. U.S. Dep't of Justice*, 87 F. Supp. 3d 318, 320 (D.D.C. 2015) (citation omitted); *accord Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011) ("[T]he vast majority of FOIA cases can be resolved on summary judgment."). "An agency that has withheld responsive documents pursuant to a FOIA exemption can carry its burden to prove the applicability of the claimed exemption by affidavit . . . ." *Larson v. Dep't of State*, 565 F.3d 857,

862 (D.C. Cir. 2009) (citation omitted).  "[S]ummary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail . . . and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (citation omitted).  This is not a high bar: "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Id.* at 374–75 (citation omitted).

### B.  Exemption 7(A)

Under Exemption 7(A), an agency may withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).  Records of personnel investigations constitute records compiled for a law enforcement purpose if they center on "specific and potentially unlawful activity by particular employees" of a civil or criminal nature.  *Stern v. FBI*, 737 F.2d 84, 89 (D.C. Cir. 1984).[2]  Once the agency demonstrates that the records were compiled for a law enforcement purpose, it can withhold information under Exemption 7(A) if the disclosure of the information "(1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated."  *Mapother v. U.S. Dep't of Justice*, 3 F.3d 1533, 1540 (D.C. Cir. 1993).

---

[2] *See also Jefferson v. U.S. Department of Justice*, Judgment, 04-5226 (D.C. Cir. Oct. 26, 2005), at 1-2 (affirming district court holding that documents compiled in course of misconduct investigation of Department of Justice attorney were compiled for law enforcement purposes) (attached as Ex. 3); *Jefferson v. U.S. Department of Justice*, Memo. Opinion, 01-cv-1418  (D.D.C. March 31, 2003), at 16 (holding that documents compiled in course of misconduct investigation of Department of Justice attorney were compiled for law enforcement purposes) (attached as Ex. 4);  *Housley v. U.S. Dep't of Treasury, I.R.S.*, 697 F. Supp. 3, 5 (D.D.C. 1988) (holding documents had been compiled for law enforcement purpose when "[t]he file at issue in this case was compiled as the result of an investigation of Special Agent Hageman, after he was accused of misconduct which, if proved, could have resulted in civil or criminal sanctions under federal law").

To demonstrate the applicability of Exemption 7(A), Defendant need not, as it must with respect to other exemptions, "provide the requestor with a description of each document being withheld, and an explanation of the reason for the agency's nondisclosure." *Oglesby v. U.S. Dep't of Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996). Rather, "[c]ategorical withholding is often appropriate under Exemption 7(A)." *Citizens for Responsibility & Ethics in Washington ("CREW") v. U.S. Dep't of Justice*, 746 F.3d 1082, 1098 (D.C. Cir. 2014). Thus, an "agency may satisfy its burden of proof by grouping documents in categories and offering generic reasons for withholding the documents in each category." *Id.* (quotation marks omitted). Under this approach, the agency has three tasks:

> First, it must define its categories functionally. Second, it must conduct a document-by-document review in order to assign documents to the proper category. Finally, it must explain to the court how the release of each category would interfere with enforcement proceedings.

*Id.* "The agency must define the categories in a way that allows the court to 'trace a rational link between the nature of the document and the alleged likely interference' with the investigation." *Manning v. U.S. Dep't of Justice*, 234 F. Supp. 3d 26, 35 (D.D.C. 2017) (quoting *Crooker v. Bureau of Alcohol, Tobacco and Firearms*, 789 F.2d 64, 67 (D.C. Cir. 1986)). Importantly, the courts should "give deference to an agency's predictive judgment of the harm that will result from disclosure of information" under Exemption 7(A). *CREW*, 746 F.3d at 1098. Finally, even if the exemption applies, the agency must demonstrate that it has released any reasonably segregable non-exempt information. 5 U.S.C. § 552(b).

II.     **Defendant Appropriately Applied Exemption 7(A)**

A.  **The Records Were Compiled for Law Enforcement Purposes.**

First, the records have been gathered by the officials working on enforcement proceedings.  Declaration of OIG Special Agent Stephen F. Lyons, March 21, 2019, ¶ 6 ("Lyons Decl.") (attached to Motion for Leave to File Declaration Under Seal and *Ex Parte*);.   No more is needed to satisfy the requirement that the records have been compiled for law enforcement purposes, especially as the Supreme Court has held that there is "no requirement that the compilation [have] be[en] effected at a specific time," as long as it predates the invocation of the exemption.  *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 153 (1989).

Second, in addition, OIG originally compiled the records for law enforcement purposes, as they were gathered in the course of an investigation of employee misconduct that centered on "specific and potentially unlawful activity by [a] particular employee[ ]." *Stern*, 737 F.2d at 89. "The OIG investigates alleged violations of criminal and civil laws by [Department of Justice or] DOJ employees and also audits and inspects DOJ programs."  U.S. Dep't of Justice, OIG, About the Office, at https://oig.justice.gov/about/.   Here, the records were compiled by OIG in the course of its investigation of allegations of misconduct against a "particular [DOJ] employee[ ]" – then FBI Deputy Director Andrew McCabe.  Perez Decl. ¶ 11; OIG Report at 1 (describing the subject of the "OIG's misconduct investigation").  As noted earlier, the OIG's investigated whether McCabe misled FBI Director Comey, made false statements under oath to FBI agents, made false statements under oath to OIG investigators, and improperly revealed an on-going, non-public FBI investigation.  OIG Report at 22-35.  Documents compiled in an investigation of such misconduct qualify as records compiled a law enforcement purposes.  *See, e.g., Jefferson*, 01-cv-1418 (D.D.C.), Memo. Opinion, at 16 (holding that OIG records of investigation of misconduct by a DOJ employee constituted records compiled for a law enforcement purpose);

*Housley,* 697 F. Supp. at 5.  Thus, Defendant has satisfied the threshold requirement for invoking Exemption 7(A).

### B.  Disclosure Would Be Expected to Harm Enforcement Proceedings

Disclosure of the redacted information in the records "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).   In his declaration, OIG Special Agent Stephen F. Lyons states that disclosure of the withheld information could reasonably be expected to interfere with enforcement proceedings.  Lyons Decl. ¶ 8.  This conclusion is more than amply supported.  The declaration demonstrates that the documents fall into three functionally defined categories, and it explains how information from each category of documents would, if released, interfere with enforcement proceedings.  Lyons Decl. ¶¶ 9-10.

These predictions of harm are eminently reasonable and would carry the day irrespective of any deference, but they certainly suffice to discharge the Agency's obligation "to explain to the court how the release of each category would interfere with enforcement proceedings" given that the Court should "give deference to [the] agency's predictive judgment of the harm that will result from disclosure of information."  *CREW,* 746 F.3d at 1098.

### I.  The Agency Must Reasonably Segregate Out Non-Exempt Information, and It Has Done So.

The Agency, of course, cannot withhold any reasonably segregable non-exempt information.  5 U.S.C. § 552(b) (requiring that an agency produce "[a]ny reasonably segregable portion" of a record "after deletion of the portions which are exempt").  And it has not withheld any such information, Perez Decl. ¶ 13; Lyons Decl. ¶ 11, though the process for making the necessary determinations is time consuming.

Segregability analysis "does not call for parsing the [documents] 'line-by-line' or segregating material 'dispersed throughout the document.'"  *Nat'l Ass'n of Crim. Defense*

*Lawyers v. U.S. Dep't of Justice Exec. Office for U.S. Attorneys*, 844 F.3d 246, 257 (D.C. Cir. 2016) (quoting *Mead Data Ctr. Inc. v. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977) ). "Instead, the emphasis is on segregation of non-exempt material found in 'logically divisible sections.' " *Id.* An agency is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). As part of this obligation, an agency must review the documents to determine whether any otherwise exempt information has been publicly and officially released. If it has, then there is no basis to withhold that information. "[W]hen an agency has officially acknowledged otherwise exempt information through prior disclosure, the agency has waived its right to claim an exemption with respect to that information." *.Am. Civil Liberties Union v. C.I.A.*, 710 F.3d 422, 426 (D.C. Cir. 2013)").

Even though the emphasis is on "logically divisible sections," the agency here conducted a line-by-line review to determine whether there are any lines that can be drawn between logically divisible sections. Perez Decl. ¶ 13. It has also carefully compared the otherwise exempt text with the OIG Report to determine whether any otherwise exempt information has already been officially and publicly revealed. As noted earlier, this process is time consuming. *See id.* But it is also necessary, because statute and precedent require Defendant to release any reasonably segregable non-exempt information, including information that has been officially and publicly acknowledged. 5 U.S.C. § 552(b); *Sussman*, 494 F.3d at 1117. Plaintiff, of course, could waive its right to information that has already been publicly released, in the OIG Report or otherwise. If it did so, that would allow OIG to process records at a faster rate. But Plaintiff has not indicated that it would waive its right to this already available information.

10

## **CONCLUSION**

For the reasons stated above, Defendant has properly applied Exemption 7(A) to the sample documents.  Accordingly, Defendant is entitled to summary judgment with respect to its invocation of Exemption 7(A) over the sample documents.  The propriety of Defendant's application of Exemption 7(A) also supports the processing schedule that Defendant has proposed for records referred to OIG.

Date: March 21, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

_____*s/Justin M. Sandberg*_____
JUSTIN M. SANDBERG (Ill. Bar. No. 6278377)
Senior Trial Counsel
U.S. Department of Justice, Civil Division
Federal Programs Branch
1100 L Street NW, Room 11004
Washington, DC 20005
Tel.: (202) 514-5838
Fax:  (202) 616-8460
Email: justin.sandberg@usdoj.gov

*Counsel for Defendant*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY | ) | |
| AND ETHICS IN WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 1:18-cv-1766-RBW |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## DEFENDANT'S STATEMENT OF MATERIAL FACTS

1. On March 19, 2018, Plaintiff submitted a FOIA request to the FBI for "all documents related to any investigation or inquiry conducted by the FBI's Office of Professional Responsibility ("OPR") of, involving, or relating to former FBI Deputy Director Andrew McCabe, who was fired by Attorney General Jeff Sessions on March 16, 201[8]."  See FOIA Request (attached to Declaration of David Hardy, Section Chief of the Record/Information Dissemination Section, Information Management Division, FBI, March 21, 2019 ("Hardy Decl."), which is attached to the brief as Ex. 1).

2. On or about April 3, 2018, the FBI completed its search.  Hardy Decl. ¶ 7.

3. On or about April 4, the FBI began processing Plaintiff's FOIA request to determine what information could be released and what information, if any, was exempt from release under the Freedom of Information Act.  *Id.*.

4. In the course of its review of the OPR file, the FBI identified various documents that were compiled or created by the U.S. Department of Justice's Office of Inspector General ("OIG") during its investigation of former FBI Deputy Director Andrew McCabe.  *Id.* ¶ 9.

1

5.  OIG had conducted a "misconduct investigation" of McCabe to determine whether he
    had lacked candor when questioned under oath by FBI agents and OIG investigators,
    whether he had lacked candor in a discussion with the FBI director, and whether he had
    improperly publicly disclosed an on-going investigation. *See* OIG, A Report of
    Investigation of Certain Allegations Relating to Former FBI Deputy Director Andrew
    McCabe, February 2018, at 1-2, available at
    https://oig.justice.gov/reports/2018/o20180413.pdf ("McCabe OIG Report").OIG Rpt. at
    1-2.

6.  The FBI contacted OIG to coordinate the processing of the documents created or
    compiled by OIG, as required by 28 C.F.R. § 16.4(d).  Hardy Decl. ¶ 9.

7.  Ultimately, the records were referred to OIG for it to respond directly to Plaintiff.  *Id.*

8.  Between October 31 and December 12, 2018, the FBI referred to OIG the responsive
    records that had been created or compiled by OIG.  *Id.* ¶ 10.

9.  OIG determined, in the course of processing the records, that significant portions of the
    records are covered by Exemption 7(A) of the FOIA, *see* Declaration of Ofelia C. Perez,
    Government Information Specialist, OIG, March 21, 2019, ¶¶ 8-12 ('Perez Decl.")
    (attached as Ex. 3).

10. At this stage, the parties are litigating the application of Exemption 7(A) to a sample of
    documents agreed to by the parties.  *See* Perez Decl. ¶ 9.

11. The records fall into three functionally defined categories.  Declaration of Steven F.
    Lyons, Special Agent, OIG, March 21, 2019, ¶ 7.  ("Lyons Decl.") (attached to Motion
    for Leave to File Declaration Under Seal and *Ex Parte*, March 21, 2019).

2

12. The Lyons declaration establishes that the material redacted from the documents in each category would, if released, risk interfering with ongoing and potential future enforcement proceedings.  *Id.* ¶¶ 8-10.

13. The materials in the sample had been gathered by those working on enforcement proceedings prior to the invocation of Exemption 7(A) over the sample documents. Lyons Decl. ¶ 6.

14. No reasonably segregable, non-exempt information has been withheld.  Perez Decl. ¶ 13; Lyons Decl. ¶ 11.

15. OIG has compared the sample documents against the McCabe OIG Report to release any information that would otherwise be exempt, but which has been publicly acknowledged. Perez Decl. ¶ 13.

16. The process of comparing the otherwise exempt material to the McCabe OIG Report was a labor-intensive and time-consuming one that required OIG to conduct a careful analysis of the underlying material.  *Id.*

Date: March 21, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

_____*s/Justin M. Sandberg*_____
JUSTIN M. SANDBERG (Ill. Bar. No. 6278377)
Senior Trial Counsel
U.S. Department of Justice, Civil Division
Federal Programs Branch
1100 L Street NW, Room 11004
Washington, DC 20005
Tel.: (202) 514-5838
Fax:  (202) 616-8460
Email: justin.sandberg@usdoj.gov

*Counsel for Defendant*